In The


Court of Appeals


Ninth District of Texas at Beaumont


____________________


NO. 09-05-443 CV


____________________


BEAUMONT INDEPENDENT SCHOOL DISTRICT, 
Appellant


V.


LINDA WORTHAM, Appellee





On Appeal from the 172nd District Court

Jefferson County, Texas


Trial Cause No. E-158573





MEMORANDUM OPINION
Linda Wortham 
sued Beaumont Independent School District (BISD) under the Texas Commission on 
Human Rights Act (TCHRA) for race discrimination. See Tex. Lab. Code 
Ann. § 21.051 (Vernon 2006). The jury returned a verdict in Wortham's favor. The 
trial court's judgment awarded $38,711 for past lost wages, $250,000 for mental 
anguish damages, $112,637.16 for prejudgment interest, and $151,340 for 
attorney's fees. BISD raises seven issues on appeal, including an issue 
attacking the legal and factual sufficiency of the evidence that race was a 
motivating factor for its decisions. Wortham filed a cross-appeal contesting the 
amount of interest awarded. We sustain BISD's factual sufficiency challenge and 
remand the cause for a new trial. 

The Statute

Section 21.051 of 
the Texas Labor Code provides in part that an employer commits an unlawful 
employment practice if the employer discriminates against an employee based on 
"race, color, disability, religion, sex, national origin, or age. . . ." See 
Tex. Lab. Code § 21.051. 
(1) 
Section 21.125(a) of the TCHRA provides that "an unlawful employment practice is 
established when the complainant demonstrates that race . . . was a motivating 
factor for an employment practice, even if other factors also motivated the 
practice, unless race . . . is combined with objective job-related factors to 
obtain diversity in the employer's work force." Tex. Lab. Code Ann. § 21.125(a) 
(Vernon 2006). The jury was instructed in this case that a "'motivating factor' 
in an employment decision is a reason for making the decision at the time it was 
made. There may be more than one motivating factor. . . ." (2) The 
defendant may attempt to demonstrate that it would have taken the same action in 
the absence of the impermissible motivation. See Tex. Lab. Code Ann. § 
21.125(b) (Vernon 2006). If the defendant establishes the "same action" defense, 
the statute restricts the remedies available to the plaintiff. Id.; see also 
Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 
(2003) (Title VII provides a similar affirmative defense for the employer.). 

An employer is 
not liable under the statute for a "careless" decision that does not violate the 
statute. See Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 740 
(Tex. 2003). That is, the question is not whether Wortham should have been 
promoted earlier based on her qualifications. Rather, the ultimate question 
under the statute is whether race was a motivating factor in the decisions not 
to promote her at the time. 
(3) 
See id. at 739-40.

The Jury's Finding

Wortham had the 
burden at trial to demonstrate race was a motivating factor in BISD's decision 
not to promote her to certain positions for which she applied in 1996 and 1997. 
See Canchola, 121 S.W.3d at 739 (citing Quantum Chem. Corp. v. 
Toennies, 47 S.W.3d 473, 480 (Tex. 2001)). The jury found Wortham met that 
burden. The jury further found that BISD would not have taken the same action in 
the absence of racial discrimination. 

The Standard of Review

First, BISD 
contends the evidence is legally insufficient to support the jury's finding that 
race was a motivating factor. Whether there is any evidence to support a verdict 
is considered a question of law, not of fact, and so a no-evidence review is 
referred to as a legal sufficiency review. A legal sufficiency review must 
credit favorable evidence if reasonable jurors could, and disregard contrary 
evidence unless reasonable jurors could not. City of Keller v. Wilson, 
168 S.W.3d 802, 827 (Tex. 2005); see also Ysleta Indep. Sch. Dist. v. 
Monarrez, 177 S.W.3d 915, 917 (Tex. 2005); Canchola, 121 S.W.3d at 
739 (citing Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001)). A 
no-evidence challenge 
(4) fails if more 
than a scintilla of evidence supports the challenged finding. City of 
Keller, 168 S.W.3d at 810. Evidence that merely creates a suspicion of the 
existence of a vital fact is not legally sufficient. Ford Motor Co. v. 
Ridgway, 135 S.W.3d 598, 601 (Tex. 2004). If there is no evidence to 
support a verdict, the appellate court reverses the trial court's judgment and 
renders a proper judgment. See generally Excel Corp. v. Apodaca, 81 
S.W.3d 817, 819, 822 (Tex. 2002). In this case, if no evidence supports the 
jury's finding, the proper judgment would be that Wortham take nothing in her 
claim against BISD. 
Second, BISD argues the evidence 
is factually insufficient to support the jury's finding that race was a 
motivating factor. Article V, section 6 of the Texas Constitution states that 
decisions of courts of appeals are conclusive on all questions of fact. See 
Tex. Const. art. V, § 6(a). A factual sufficiency challenge differs from a 
legal sufficiency challenge both in the standard of review the appellate court 
applies and in the remedy sought. In a factual sufficiency issue, the reviewing 
court weighs all the evidence for and against the jury's finding and sets aside 
the verdict if the supporting evidence is so weak, or the evidence to the 
contrary is so overwhelming, that it is clear the finding is wrong and 
manifestly unjust. See Dyson v. Olin Corp., 692 S.W.2d 456, 457 (Tex. 
1985); Western Atlas Int'l, Inc. v. Wilson, 930 S.W.2d 782, 784 (Tex. 
App.--Tyler 1996, writ denied); see also Garza v. Alviar, 395 S.W.2d 
821, 823 (Tex. 1965). This standard of review assures the right to trial by jury 
remains inviolate and assures appellate court review of fact questions, both of 
which, in the words of the Texas Supreme Court, "have peacefully co-existed for 
almost one hundred and fifty years, and are thoroughly rooted in our 
constitution and judicial system." Cropper v. Caterpillar Tractor Co., 
754 S.W.2d 646, 652 (Tex. 1988). As part of the appellate jurisdiction over 
factual matters, the courts of appeals weigh countervailing evidence. 
See Tex. Const. art. V, § 6(a); Pool v. Ford Motor Co., 715 
S.W.2d 629, 633-35 (Tex. 1986). An appellate court must sustain a factual 
sufficiency issue and remand the case for a new trial if the evidence, though 
amounting to more than a scintilla, is nonetheless too weak. See generally 
Vickery v. Vickery, 999 S.W.2d 342, 376 (Tex. 1999). While appellate courts 
are required to reverse a verdict that is not supported by sufficient evidence, 
a court of appeals may not then proceed to determine the facts. Remand, rather 
than rendition, is proper in that context. See generally Bay, Inc. v. Ramos, 
139 S.W.3d 322, 330-31 (Tex. App.--San Antonio 2004, pet. denied); see 
also Pool, 715 S.W.2d at 632-35. If the evidence in the trial record is 
factually insufficient, a new trial must be granted. 

The Trial Record 

Wortham began her employment as an 
elementary school teacher in the early 1980s. Subsequently, she obtained 
master's degrees in School Administration (1989) and in Counseling and 
Development (1995). The State Board for Educator Certification certified her in 
those fields. For a time, Wortham worked as a counselor in private practice "on 
the side." In 1988, she began teaching at Amelia Elementary School. She also was 
involved in student extra-curricular programs. Wortham was the "technology lead 
teacher" at Amelia Elementary and the technology liaison between the campus and 
the district, and she has written curricula for BISD. When she filed her 
complaint with the TCHR in 1997, (5) she 
had been teaching for fourteen to fifteen years. 
From 1996 to 1997, Wortham applied 
with BISD for over twenty counselor and assistant principal positions and one 
curriculum coordinator position. As we understand her brief, she challenges ten 
of those employment decisions. In her brief to this Court, Wortham asserts "she 
was treated in a disparate manner than African-American employees in that she 
was denied promotional opportunities because of her race, Caucasian." Wortham 
argues race is a motivating factor in BISD's promotion policies, and she says 
"[t]he decisions to place lesser qualified individuals in those positions at 
those campuses comports with Dr. Thomas' philosophy of finding the applicant who 
is the 'best fit' by considering race and culture of the student population to 
be served and the applicant." 
BISD's written policy states that 
race shall not be used in hiring or promotion decisions. Wortham argues the 
testimony of Dr. Carrol Thomas, BISD's superintendent, reveals that race is a 
motivating factor in employment decisions and race was a motivating factor in 
the challenged decisions. In his letter responding to Wortham's Level 3 
Grievance, Dr. Thomas stated BISD was looking for the "best fit" in personnel 
placement. In his testimony presented at trial, Dr. Thomas explained "best-fit" 
and his approach to hiring and promotion as follows: 
Q. [Wortham's Attorney]: . . . 
Would you tell me what "best fit" means in your mind?
A. [Dr. Thomas]: "Best fit" means 
the person who would probably be able to do the best job at the particular 
campus or place, or whatever. It's just like Carrol Thomas. I think I'm an 
excellent fit for Beaumont Independent School District. I think I'd be a 
terrible fit if I was superintendent of Vidor. I just wouldn't fit there. I 
mean, it just wouldn't make -
Q. You used the example that you 
wouldn't be a good fit for Vidor. Why wouldn't you be a good fit for 
Vidor?
A. Because I have not had many 
experiences in working with a population similar to that at Vidor as much as 
I've had working with the population here in Beaumont. 
Q. [Wortham's Attorney]: The 
personal experiences that you discussed concerning fits for employees, does race 
play a part in those personal experiences?
A. I think -- I think race would 
cause you to . . . get a certain experience level versus another, but it's not 
the only criteria. 
Q. Have you ever stated that 
children on a particular campus would be best served by having administrators of 
their own culture?
A. No.
Q. Do you believe that to be 
true?
A. I think -- I think -- I think 
that's more true than not.
Q. Have you ever had discussions 
with your assistant superintendents about the issue of whether children on a 
particular campus would be best served by someone of their own 
culture?
A. Not to my knowledge, but . . . 
I've had plenty of conversations with staff and all about having -- being sure 
that you have a perfect fit -- or you have a good fit to the persons that you 
bring in, and that you have people that can meet and communicate with your 
community, communicate with your students, as well, teachers and people who can 
recruit students to your campus and everything else along that 
way.
Q. And your experience as a person 
and your culture plays a part in whether you will fit in a particular 
job?
A. I think your culture has a lot 
-- would play a part in you getting experience that would assist you in being 
successful in certain jobs. 
Q. Have you had discussions with 
the board concerning the percentages of blacks or whites in the employment ranks 
at Beaumont Independent School District?
A. And I would say yes, when we 
got here, that concern has been discussed with me.
Q. And what was the 
concern?
A. The concern was the lack of 
blacks and the fact of the matter that -- were African-Americans being 
promoted.
Q. Did the board give you any 
direction to deal with the problem?
A. No.
Q. Were you ever given any 
instructions that "We would" -- or comments made that "We would like to see the 
percentage of black employees be commensurate with the percentage of black 
students"?
A. I don't think that's ever come 
from the board. I think we had a -- what, the EEOC, or some kind of committee to 
come down here and saying that we need -- the comment or suggestion was we need 
to have more African-American employees. 
Dr. Hubert Monroe, BISD's 
executive director of personnel, also testified as follows concerning promotions 
within the district: 
Q. [Wortham's Attorney]: Have you 
ever had conversations with anyone regarding the need to promote minorities 
since Dr. Thomas has been the superintendent at B.I.S.D.?
A. [Dr. Monroe]. Yes. We had a 
civil rights review . . . about a year and a half ago. I'm not sure about the 
year on that. But it's been since he's been here. And the concern was that 
B.I.S.D. does not have enough minorities . . . on the board here in the 
district. And albeit . . . they were complimentary . . . in our efforts to try 
and move in that direction. 
. . . .
Q. Okay. Would you agree that a 
child's education experience is enriched by associating daily with 
administrators of other races.
A. I think it can be. 

. . . .
Q. Would you say that B.I.S.D. has 
made a concerted effort to recruit more heavily at what are traditionally black 
universities within the past several years?
A. Are we interested in increasing 
the number of minorities in the district? Yes.
Dr. Harold Steward, former 
principal of Amelia Elementary where Wortham taught, testified as 
follows:
Q. [Wortham's Attorney]: Have you 
ever heard any B.I.S.D. administrator make comments regarding the need to 
promote more minorities?
A. [Dr. Steward]: To promote more 
minorities? I'm not in a position to hear those kinds of 
statements.
Q. So, you've never heard anyone 
at B.I.S.D. make comments along those lines?
A. The B.I.S.D. has said, 
"Evaluate and review your ethnic relationships, ratios and hire the best 
qualified person."
Q. Okay. And who at B.I.S.D. said 
that there was a need to review the ethnic ratios?
A. They might not have used those 
exact terms. The personnel director says always look at your -- your -- your 
student population, look at your staff population.
Terry Ingram, assistant 
superintendent for BISD and former West Brook High School
principal, testified as follows: 

Q. [BISD's Attorney]. Mr. Ingram, 
are you aware of a state-wide effort for more recruitment of minority teachers? 

A. [Ingram]. I am.
Q. When you hear the phrase 
"recruitment of minority hires," what does that mean to you? 
A. Well, for me, it's saying -- 
normally it would be teaching positions. We're trying to get more 
African-American teachers, more Asian teachers, more Hispanic teachers into our 
district. Because we have an increase in the Hispanic population in our 
district, and we feel like that students can relate to those teachers a little 
bit better.
Q. But does that have anything to 
do with the way -- did that have anything to do with the lack of promotion or 
the reasons that you chose not to promote Linda Wortham?
A. No, it did not.
Four current or former principals, 
Lynn Cummins, Sybil Comeaux, Anita Watson, and Ingram indicated they were 
familiar with the "best fit" or "good fit" terminology. When asked at trial 
whether he had ever been told by Dr. Thomas "to hire a white person or a black 
person to fill a certain position," Ingram testified, "No, I have not." "I 
basically have tried to hire who the best candidate is for the job. It did not 
matter what race." He stated, "On my campus I've never addressed race as a best 
fit." Anita Watson, BISD's director of special education and former Amelia 
Elementary principal, testified Dr. Thomas's definition of "best fit" refers to 
the person who is going to work as a team player and who will bring success for 
the students on that campus. Watson testified she was never told "to do a best 
fit." Comeaux testified she has "never been instructed to hire any particular 
race. Our instructions are to get the best person for the job." 
BISD argues Wortham did not 
demonstrate race was a motivating factor, because the school principals were the 
ones actually making the relevant employment decisions, and the principals 
indicated they did not consider race in making their promotion recommendations 
to Dr. Thomas. In its brief, BISD does not refer to or explain Dr. Thomas's 
testimony concerning race as a criteria, although Wortham relied on this 
testimony in jury argument and in her brief to this Court. BISD does not argue 
that its hiring and promotion policies represent a plan reasonably designed to 
end discriminatory school practices or a plan to incorporate work force 
diversity programs. See Tex. Lab. Code Ann. §§ 21.114, 21.121, 
21.125(a) (Vernon 2006); see generally Grutter v. Bollinger, 539 U.S. 
306, 123 S.Ct. 2325, 156 L.Ed.2d 304 (2003); Gratz v. Bollinger, 539 
U.S. 244, 268-69, 123 S.Ct. 2411, 156 L.Ed.2d 257 (2003). Terry Ingram, 
assistant superintendent, testified the District's attempt to hire more minority 
teachers had nothing to do with the decision not to promote Linda 
Wortham.
Dr. Thomas explained the procedure 
for staffing decisions. Once BISD's personnel office screens the applicants and 
eliminates those not meeting the posting requirements, a school principal 
seeking to fill the position ultimately interviews the applicants. The process 
may also involve the Campus Education Improvement Committee in conjunction with 
the principal. Once the applicants complete the interview process, the principal 
makes a recommendation to the superintendent, who then makes a recommendation to 
the Board. The Board hires based upon the superintendent's recommendation. Under 
the process Dr. Thomas described, an applicant does not generally receive Dr. 
Thomas's consideration without first receiving the principal's recommendation. 

Although the Board makes the final 
hiring determination after receiving Dr. Thomas's recommendation, Dr. Thomas 
testified the Board had never rejected any of his recommendations. Evidence was 
presented that the superintendent, not a principal, is the final authority in 
hiring and promoting decisions. A principal's recommendation goes to Dr. Thomas 
for his approval or rejection. As Dr. Steward explained in his response to 
Wortham's grievance, "It is not in the principal's job description nor is the 
authority granted for him to hire personnel for the Beaumont Independent School 
District." Cummins, former Vincent Middle School principal, testified the 
"superintendent has the final authority" regarding the placement of persons in 
counselor or assistant principal positions. 
In addition to alleging BISD had a 
race-motivated promotion policy that was applied in a discriminatory manner to 
restrict her opportunities, Wortham also asserts her qualifications were 
superior to those of other applicants promoted instead of her. This evidence, 
she argues, is further proof race was a motivating factor in the decisions not 
to promote her. Her certifications at the time of the employment decisions were 
the following: Mid-management Administrator (grades PK - 12); Counselor (grades 
PK - 12); Elementary self-contained (grades 1 - 8); Elementary history (grades 1 
- 8); and Kindergarten (grades PK - KG). Wortham presented evidence of her 
performance evaluations conducted from 1998 to 2003. Her ratings were either 
"proficient" or the top rating, "exceeds expectations," with the majority of the 
entries being "proficient"; the reviewers' comments were positive. None of the 
performance evaluations noted any problem with her performance. 
The author of one of those 
evaluations was Dr. Steward, Wortham's former supervising principal. Dr. Steward 
testified Wortham was an outstanding teacher, and he thought she would make a 
"great" counselor. He stated, "She had good evaluations as a teacher." He 
testified he could place emotionally disturbed children in her classes, because 
with her private counseling experience, he felt she was the most qualified 
teacher to work with them. Regarding suggestions that Wortham did "not [get] 
along" with parents, Dr. Steward testified that "for the most part [he] found 
that all teachers get crossed one way or another with a parent[,]" and he 
attributed conflicts among the teachers themselves to personality issues. He 
further testified, "Ms. Wortham is a great teacher. Those other teachers are 
great teachers. They didn't always see things eye to eye." Dr. Steward indicated 
he never spoke to Wortham about a problem with patience, though he may have 
mentioned it to Dr. Monroe, BISD's personnel director. Steward indicated he did 
not find the patience issue to be of any great significance. He encouraged 
Wortham to apply for promotions in the District. 
Wortham emphasized at trial that 
her certifications were permanent, not temporary. Of the employment decisions 
she challenged, six applicants had temporary certifications, and one had no 
certification in the field. Dr. Thomas explained temporary certification as 
follows:
The temporary certification is 
when TEA states that this person is certified and they're given this person five 
years to operate in that job. You know, and then after five years, if that 
person hasn't completely met -- or met all the requirements, then, that person 
can no longer function in that job. 
Wortham explained that "[a]fter 
you have completed all the course work, then you sit for a state exam that you 
have to pass to get fully certified. . . . [Y]ou have a time period where you 
have to complete this stuff, and if you don't complete it within that time 
period, then your temporary certification will lapse." 
Dr. Monroe, executive director of 
personnel, explained there is no temporary certification available for a 
counselor's position. As to an assistant principal's position, he testified he 
would prefer to have someone "fully certified" if all other things were equal. 
Terry Ingram, BISD assistant superintendent, explained temporary certification 
means the paperwork is completed, and the candidate is waiting to take the test. 
Sybil Comeaux, director of personnel for BISD, explained that those with 
temporary certification are certified and able to do the job, and the State 
Board of Education considers them certified. Both Comeaux and Ingram testified 
they had recommended promotions for white applicants holding temporary 
certificates. Ingram further explained that there was a time in "'94, '95," 
"when there was a lack of candidates, state wide, in certified people. So, as 
long as they were working toward it and had their hours, they would employ 
them." 
BISD argues race played no part in 
the challenged employment decisions. 
(6) In a letter 
addressed to Wortham, Dr. Thomas indicated he discussed Wortham's "patience, 
cooperative spirit and attitude" with her at the December 1997 Level 3 grievance 
hearing. He testified that some BISD principals told him Wortham had not been 
promoted because of "attitude, personality, behaviors and those types of 
things." Of the principals Thomas named as sources of this information, only 
Ingram testified at trial, and he had not had any personal experience with 
Wortham. 
Anita Watson, principal at Amelia 
Elementary from 1998 to 2004, testified Wortham demonstrated "inappropriate 
behaviors" at the end of the 2004 school year. Watson explained that at the 
conclusion of an ARD meeting, a parent stated her child was fearful of Wortham, 
and Wortham became "very upset[.]" Watson told Wortham that she "had to be able 
to address situations like that in a calm manner." Watson testified two parents 
requested the removal of their children from Wortham's class during the 
2003-2004 school year. Three teachers complained they could not keep up with 
Wortham's pace in technology instruction. Watson thought Wortham lacked patience 
with their slowness in grasping the skills. Another teacher had difficulty 
accepting the change in Wortham's roles from teacher to counselor in 2004. 
Wortham explained the teacher was not following the testing guidelines and was 
unhappy about being required to do so. Apparently one teacher was in favor of 
using corporal punishment on emotionally disturbed children, and Wortham felt 
that alternate methods of punishment would be more effective. According to 
Watson, Wortham's problem was with "people skills." However, Watson agreed it is 
fairly common to receive complaints concerning teachers because teaching is a 
stressful occupation. Watson also testified that Wortham was an excellent 
teacher on whom she could count for extra-duty service or help. Wortham's 
asserted deficiencies, as testified to by Dr. Thomas and Ms. Watson, apparently 
occurred after the challenged employment decisions. 
BISD presented the testimony of 
nine principals 
(7) to explain the 1996-97 employment decisions regarding Wortham. 
Wortham challenged the employment decisions of at least four of the nine, as 
well as those of principals BISD did not call as witnesses. Lynn Cummins, former 
Vincent Middle School principal, testified he did not know the applicant he 
recommended did not have either a temporary or permanent certificate in 
counseling. He explained that BISD's personnel office screens the applicants and 
sends the principals only the applications of persons who are certified. Cummins 
testified he recommended the candidate because she had taught his son, and 
Cummins knew her as a parent and fellow teacher. Describing her as a "very good 
fit" for the campus, Cummins maintained race played no part in his decision. He 
testified, "The prior counselor was a white female, and I had no preconceived 
desire for a black or white." Cummins stated, "What I was looking for was the 
person who would best meet the needs of my students in that diverse population, 
and would also be a good team player with my faculty." 
Sybil Comeaux interviewed Wortham 
for counselor and assistant principal positions at Central High School. Comeaux 
testified she had never been instructed to hire any particular race. "Our 
instructions are to get the best person for the job." She testified BISD 
promoted white candidates with temporary certificates. Although Comeaux "felt 
[Wortham] was knowledgeable, . . . she still didn't present to me what I thought 
would be a good fit for the particular job to be assigned." Comeaux testified 
Wortham "came across" as feeling the students were "beneath" her and "she was 
probably being sent to save them, or something." Comeaux recommended an 
applicant of the same race as Wortham who was the "best fit" for the counselor 
position. Wortham did not challenge that promotion. Neither did Wortham 
challenge the promotion of an African-American applicant who had twenty-four 
years of teaching experience and was certified for the assistant principal's 
position. Wortham is not complaining of the positions at Central High School for 
which Ms. Comeaux interviewed her. 
David Dunivant, former 
co-principal at Ozen High School, interviewed Wortham for positions at Ozen, but 
he did not remember any specifics about her interviews. Dunivant indicated he is 
not particularly impressed with an applicant who presents with a "proficient," 
rather than "exceeds expectations," rating. He testified BISD has never given 
him a directive to hire administrators of a certain race. He stated, "[W]e hired 
the individuals we hired based on their qualifications, and they were the best 
candidates for those jobs at that time." Dunivant testified race did not play a 
part in any of his hiring decisions for Ozen High School. Wortham is not 
complaining about his employment decisions. 
Ava Colbert, principal at Homer 
Drive Elementary, interviewed Wortham for the assistant principal's job at 
Homer. Wortham does not challenge Colbert's employment decisions. Colbert 
recommended a white applicant who had worked at Homer as a curriculum 
coordinator, knew the staff and makeup of the community, and who had "great 
rapport with all of our teachers and staff members and parents." For another 
counselor position, Ms. Colbert recommended an African-American applicant who 
was recommended by her principal and had twenty-five years of teaching 
experience. Colbert testified the applicant's race had nothing to do with 
Colbert's recommendation of her for the counselor position. Colbert explained 
BISD had never told her to hire someone of a certain race.
Terry Ingram considered Wortham 
for two counselors' positions and an assistant principal's job at West Brook. He 
stated, "Ms. Wortham is a very good interview, as most people who interview 
are." Ingram stressed that the ability to "fit into the team" is an important 
attribute for any applicant. "[W]hen you interview, you're not just looking at 
qualifications, you're looking at how are they going to fit in with the team." 
He testified she had no secondary-level experience. Further, Ingram testified 
Wortham's performance evaluations, with predominantly "proficient" ratings, may 
not have measured up to the standard he wanted on his staff. Ingram indicated he 
had heard Wortham had possibly lost her temper with co-workers or with students 
and parents, but Ingram testified he never had any personal experience with 
Wortham that would indicate to him she would be a bad employee or bad counselor. 

Tom Ammons, former principal of 
Austin Middle School, testified he interviewed Wortham for an assistant 
principal's position. He recalled that he was looking for someone with 
secondary-level experience. The applicant he recommended was African-American. 
She had been teaching for approximately nineteen years, had secondary-level 
experience, and was certified. He testified he did not recommend Wortham, 
because he felt experience with middle school behavior was important, and a 
person with elementary experience would not be equipped to deal with middle 
school discipline problems. Ammons indicated race was not a factor. 
Clarence Francois, retired 
principal of French Elementary, testified he recommended promotion of an 
African-American applicant with a temporary certificate. Francois testified that 
the applicant for the assistant principal's job was a very experienced fourth 
grade teacher on his staff. "[S]he was real good with students, parents; and 
also she and I were able to get along. We had the same philosophy towards 
education. And she was a hard worker. And that is why I hired her." Francois 
testified he did not base his decision on race, and BISD never instructed him to 
hire on that basis. 
Dr. Shirley Bonton, former 
principal at Pietzsch-MacArthur Elementary, testified she did not consider race 
when she recommended the promotion of an African-American applicant instead of 
Wortham. The candidate was certified, but she had no counseling experience. 
Wortham was certified, had twice the teaching experience, and had worked in 
private counseling. Although Dr. Bonton did not remember the specifics of the 
interview with Wortham, Bonton testified she considered "[e]xperience, 
communication skills, [and] problem-solving skills" in making employment 
recommendations. Dr. Bonton testified no supervisor in BISD had ever instructed 
her to consider race. 
Wortham also challenged three 
other positions. One was an assistant principal's job at South Park Middle 
School. She testified the applicant recommended was an African-American who 
possessed a temporary certificate. Wortham testified this applicant's temporary 
certificate in mid-management "has lapsed, and now he has a temporary Assistant 
Principals certification." Wortham stated, "So he was not fully certified; still 
is not." Another challenged position was the assistant principal's job at 
Pietzsch-MacArthur Elementary. Rather than recommending Wortham for the 
position, the principal selected an African-American with a temporary 
certification; Wortham indicated this applicant's temporary certification lapsed 
in October 2003. With respect to another assistant principal's position at Lucas 
Elementary, Wortham testified an African-American applicant, who held a 
temporary certification and less teaching experience (three to five years), was 
recommended over Wortham. 

Legal Sufficiency

In determining whether there is 
any evidence to support the jury's finding, an appellate court credits evidence 
which supports the finding if a reasonable and fair-minded jury could, and must 
disregard all contrary evidence that a reasonable and fair-minded jury could 
have disregarded. City of Keller, 168 S.W.3d at 827. A reasonable and 
fair-minded jury could infer from Dr. Thomas's testimony that race was one 
factor he considered in personnel placement decisions. As previously noted, BISD 
does not argue that his approach was part of a plan to end discriminatory school 
practices or to incorporate work force diversity programs. Furthermore, the jury 
heard testimony that BISD's attempt to hire minorities had nothing to do with 
the decisions not to promote Wortham. 
There is evidence Dr. Thomas was, 
as a practical matter, the final authority in hiring and promoting. Dr. Thomas 
testified the Board had always approved his decisions. There is also evidence 
the principals made the initial selection of those to promote, and without that 
initial recommendation, a candidate generally would not reach Dr. Thomas for his 
approval or rejection. Some principals knew of Dr. Thomas's approach, although 
their interpretation of his policy differed from Dr. Thomas's stated 
explanation. Dr. Steward, a former BISD principal, testified BISD had, in 
substance, instructed him to evaluate ethnic relationships and ratios on his 
campus and hire the best-qualified person. 
Wortham argues she was more 
qualified than some of those promoted instead of her; she had permanent 
certifications, while some applicants had only temporary certifications. There 
is evidence in the record that a temporary certification will lapse unless the 
applicant passes a test within a specified period of time, and the temporary 
certificates of two of the applicants promoted instead of Wortham did lapse. Dr. 
Monroe testified that he would prefer to have someone fully certified, if all 
other things are equal. 
In her brief, Wortham challenges 
"the pervasive nature of the racial discrimination occasioned upon her[.]" 
Although she states that "direct evidence of racial animus is rare in employment 
claims," she maintains she presented such evidence through the testimony of Dr. 
Thomas, Dr. Monroe, and Dr. Steward. As detailed above, there is more than a 
scintilla of evidence supporting the jury's finding, though the supporting 
evidence seems particularly weak with respect to the principals' recommendation 
decisions. Under the legal sufficiency standard, BISD's argument that the jury 
finding has no evidentiary support must be rejected. See City of 
Keller, 168 S.W.3d at 827-28 (standard of review for legal sufficiency). 
BISD's no-evidence challenge is overruled.

Factual Sufficiency

BISD also argues the evidence 
supporting the "race-as-a-motivating factor" finding is factually insufficient. 
Under the standard of review for factual sufficiency, an appellate court weighs 
all the evidence in the trial record, and must weigh in the balance the evidence 
that conflicts with the jury's finding as well as the evidence supporting the 
finding. An appellate court 
views all the evidence for and against the jury's finding, and must set aside 
the verdict if the supporting evidence is so weak, or the evidence supporting 
the finding is so against the great weight and preponderance of the evidence, 
that the finding is clearly wrong and unjust. See Dyson, 692 S.W.2d at 
457; Western Atlas Int'l, Inc., 930 S.W.2d at 784; see also Garza, 
395 S.W.2d at 823.
The principals testified that race 
was not a factor in any of their promotion recommendations to Dr. Thomas. 
Generally, a principal, not Dr. Thomas, made the initial recommendation of a 
candidate for promotion, and without a principal's recommendation, Dr. Thomas 
did not consider an applicant. Though some principals had heard of Dr. Thomas's 
approach, they testified BISD never told them to hire or not hire a person of a 
certain race. The principals testified they looked for the person with the best 
qualifications. There is evidence in the record of some reasons the principals 
chose applicants other than Wortham. Those reasons include the choice of someone 
with middle school experience for a middle school position; the choice of one 
candidate who had taught the principal's child, so the principal knew the 
candidate personally; and the choice of someone who was already on staff on the 
principal's campus and shared his educational philosophy. BISD argues there is 
some testimony in the record suggesting Wortham lacked sufficient "people 
skills" or was impatient, though this testimony apparently concerned events 
occurring after the challenged employment decisions. The District has promoted 
Wortham to a counselor position. 
The evidence indicates a person 
with temporary certification is recognized by the Texas Education Agency and 
BISD as certified and qualified to hold a job in that field for a prescribed 
period of time. Ingram testified that the permanent certification requirement 
was more relaxed in earlier years. The record also includes evidence that BISD 
hired, without regard to race, applicants who had temporary certifications 
during the time frame at issue. In her brief to this Court, Wortham identifies 
more than twenty positions she applied for and was denied, and she identifies 
ten of those positions as being filled by white applicants. She does not 
challenge those ten decisions. 
In the factual sufficiency review, 
all the evidence is weighed, both for and against the jury's finding. The great 
weight of the testimony by all of the principals -- that race played no role in 
their decisions not to recommend Wortham and that their decisions were based on 
other considerations -- undercuts any significance of the superintendent's 
testimony. The evidence reveals that the superintendent generally did not make a 
promotion decision unless a principal had first made a recommendation to promote 
a candidate. Without additional proof, it does not necessarily follow from the 
superintendent's testimony that the principals violated BISD's written policy 
that race shall not be considered. Because of the insufficiency of the evidence 
linking race as a motivating factor to any of the ten specific challenged 
employment decisions, the jury finding on this trial record must be set 
aside.
BISD's factual sufficiency issue 
is sustained. We need not address the remaining issues as they would result in 
no greater relief than a new trial. The judgment is reversed, and the cause is 
remanded to the trial court for further proceedings.
REVERSED AND REMANDED.

_________________________________ 
DAVID GAULTNEY
Justice
Submitted on June 29, 
2006
Opinion Delivered September 14, 
2006
Before Gaultney, Kreger, and 
Horton, JJ. 
1. Because one of the purposes of the Act is to promote 
federal civil rights policy under Title VII, Texas courts look to both Texas 
cases and analogous federal precedent for guidance. Quantum Chem. Corp. v. 
Toennies, 47 S.W.3d 473, 476 (Tex. 2001). 
2. Appellant does not challenge this definition. 
3. In 2004, six years after 
she filed suit, BISD promoted Wortham to a counselor position at Amelia 
Elementary School. 
4. In a discrimination case 
fully tried on the merits, the reviewing court does not engage in a 
McDonnell Douglas burden-shifting analysis, but inquires whether the 
evidence is legally sufficient to support the jury's ultimate finding. 
Canchola, 121 S.W.3d at 739; see McDonnell Douglas Corp. v. 
Green, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). 
5. See Wortham v. Beaumont Indep. Sch. 
Dist., No. 07-02-0017-CV, 2002 Tex. App. LEXIS 8302, at *6 (Tex. 
App.--Amarillo Nov. 21, 2002, no pet.) (not designated for publication). 
6. BISD also asserts the evidence is legally and factually 
insufficient to show Wortham was "clearly more qualified" than those who 
received promotions. However, Wortham is not required to make this showing to 
establish an unlawful employment practice. See Little v. Tex. Dep't of 
Criminal Justice, 177 S.W.3d 624, 632-33 (Tex. App.--Houston [1st Dist. 
2005, no pet.) (citing Julian v. City of Houston, 314 F.3d 721, 728 
(5th Cir. 2002)). (Although pointing to clearly superior qualifications is one 
permissible way to show intentional discrimination, a plaintiff is not required 
to make this showing); but see Odom v. Frank, 3 F.3d 839, 845-46 (5th 
Cir. 1993) . 
7. Some now have other BISD administrative positions.